RICHARD YORK & C. J. YORK *v.*
JOHN H. BRUMMETT ET UX

5-4145                                               412 S. W. 2d 617

Opinion delivered March 13, 1967

*Guy H. Jones,* for appellants.

*Tom Gentry,* for sppellees.

CARLETON HARRIS, Chief Justice. On October 9, 1964, appellant, Richard York, was involved in an automobile accident with John H. Brummett and wife in Pulaski County, Arkansas. Subsequently, suit was instituted in the Pulaski County Circuit Court (Second Division) by

the Brummetts against York and his father, C. J. York, the complaint alleging that, at the time of the mishap, Richard York was operating a vehicle owned by C. J. York, and that the former was the agent, servant, and employee of C. J. York, and acting within the scope of such employment. The Brummetts asserted personal injuries which they alleged were caused by the negligence of Richard York, and they sought judgment for damages. On trial, the jury returned a verdict for John H. Brummett in the amount of $700.00, and returned a verdict for his wife, Alma Brummett, in the sum of $6,-000.00. From the judgment so entered, the appellants bring this appeal. Though Richard York is an appellant, he sets out no points for reversal, nor is any reason given why the judgment against him should be reversed. Two points for reversal are set out by appellant, C. J. York, but they really are to the same effect, viz., that this appellant was entitled to a directed verdict, because appellees failed to sustain the burden of showing that Richard York was the agent and servant of C. J. York at the time of the collision.

The evidence reflected that five young men, ranging in age from 17 to 22, left the home premises of C. J. York in Mayflower early on the morning of October 9, 1964, in a truck owned by C. J. York for the purpose of traveling to the site of a job, which C. J. York had in North Little Rock. The five boys, three of whom were sons of York, were employees of this appellant. The five testified that they did not receive pay during travel time, but rather, in accordance with the number of hours they actually worked, the pay commencing when they started work on the job that was to be done. Richard York testified that no one told him how to get to and from work, what route to take, or what vehicle to use. According to Raymond York, "Well, if we had to take all of our tools, paint buckets, and stuff, we carried the panel, the old truck. If we didn't, we used Dad's other truck or sometimes we drove our own car." Most of the young men stated that there was no particular time for

them to be at work, though one testified that he was supposed to be there around 7:00.

C. J. York admitted that he owned the truck, and that the boys were on their way to work in it when the collision occurred. From his evidence:

"Q. And you were furnishing a truck in order to furnish their transportation to work, is that correct?

A. They could use the truck if they wanted; yes, sir."

He then stated that he never knew what vehicle the workers were going to use, since they would leave before he arose in the morning. It is earnestly contended that the evidence was insufficient to make a jury case against Mr. York.

Apparently, these young men had followed the same procedure of getting to the job site for some period of time. Jimmy Booker, one of the young men, and brother-in-law of C. J. York, stated that he made $1.75 an hour; that C. J. York kept the number of hours, and that the workers would tell him when "we came in of an evening how much time we put in." When asked if York ever told him what route to take, or when to leave, he answered, "Very seldom." While whatever transpired on other occasions would have no actual bearing on the events of October 9, it does seem that a pattern of using C. J. York's vehicles for transportation to and from work had been established.

Eddie York, also a son of appellant, testified that they were supposed to be at work around 7:00 A.M., and he stated that there was only one seat in the truck, so they were sitting on mats (in the bed of the truck).

From his testimony:

"Q. Was there anything else in the truck?

A. Buckets and our tools; yes, sir.

Q. Would this be tools for painting, and buckets for painting?

A. They weren't buckets of paint. They were empty buckets.

Q. And what sort of tools were in the truck?

A. Tools we have on the job, to work with.

Q. What would you call them, would you name one or two of them?

A. Well, draw knife...

Q. * * * these are tools used in construction type work?

A. Work we did; yes, sir.

Q. Did you know what sort of work you were going to do that day?

A. Yes, sir.

Q. What was that?

A. Painting and coating."

In *Carter Truck Line* v. *Gibson*, 195 Ark. 994, 115 S. W. 2d 270, quoting an earlier case, we said:

"The act of the servant for which the master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of his master."

In *Helena Wholesale Grocery Company* v. *Bell*, 195 Ark. 435, 112 S. W. 2d 416, an employee of the Helena Wholesale Grocery Company, while driving his employer's truck, was involved in an automobile collision. The

company contended that there was no evidence in the record tending to show that at the time of the collision, the driver was engaged in the furtherance of its business, but rather the evidence showed that the employee was using the truck on a mission of his own, and that he had been permitted to take the truck home on a number of occasions as a matter of convenience in getting back to work. It was also pointed out that there was no merchandise in the truck. From a judgment against the company, there was an appeal. We said:

"Appellant contends that the testimony of the driver does not show that appellant permitted the driver of his truck to keep said truck at his home at night for the convenience of the defendant company and, failing to so show, the driver was not engaged in the prosecution of the business of appellant while driving said truck to his home. We think the evidence tends to show that it was for the benefit of appellant for the driver to take the truck to his home and keep it overnight. ***The evidence did not constitute an occasional lending of the truck to go home for a meal or for some other independent purpose of his own. We think the jury were warranted, and reasonably so, in drawing the inference from the evidence that appellant's permission to take the truck to the driver's home every night was for the convenience and benefit of said appellant, and that on account of this convenience and benefit the driver was engaged in the prosecution of the business of appellant while driving said truck to his home. The court declared the law to be that, if the jury found from the evidence that appellant permitted the driver of the truck to keep said truck at his home at night for the convenience of appellant, then the driver would be engaged in the prosecution of the business of appellant while driving said truck to his home. There is no dispute in the evidence that appellee was injured by the truck at a time it was being driven home by the regular employee of appellant."

Also, in *Ball* v. *Hail,* 196 Ark. 491, 118 S. W. 2d

668, Ball, an employee, finished his work for the day at the Rider Motor Company's place of business, and while on his way home, driving a car belonging to Rider Motor Company, a collision occurred. The evidence reflected that Ball had attended a meeting of salesmen of the company which adjourned late on a Saturday night. Rider Motor Company appealed a judgment against it, and this court said:

"Appellants vigorously assail the judgment as not being supported by any substantial evidence. They argue most forcefully that the evidence which they have offered is undisputed and that there was no question of fact to be determined in fixing liability. The positive statements, repeated several times perhaps to give emphasis, are that Mr. Ball attended the meeting of the salesmen of the Rider Motor Company and that after the meeting adjourned late Saturday night, Mr. Ball's employment for the day, or duties thereof were ended and that it was after this closing of the day's business that the accident occurred and that on account of that alleged fact, which it is contended was undisputed, the Rider Motor Company bases its contention that it was not liable.

\* \* \*

" \* \* \* We are forced to decide appellants' conclusions are not arrived at upon sound legal premises.

"Under the circumstances above stated there are certain presumptions that enter into the consideration of the evidence. Mr. Ball and Mr. Rider are the sole or only witnesses testifying for appellants. They are interested parties, both defendants in suit and on that account their testimony will not be taken as undisputed.\*\*\*

"There was also another presumption present in this case that arises out of Mr. Ball's employment by Mr. Rider and the fact that he was driving or operating Mr. Rider's car at the time of the accident. That presumption is that the servant was acting for the master

while he was operating the master's car. That is a mere presumption. It may be overcome by evidence.***

\* \* \*

"From the foregoing the only conclusion that can be reached is that the facts are not clear and undisputed as argued.

\* \* \*

"***Furthermore, we see little difference in a contention that he was discharged and acting outside the scope of his employment, because he started home, than we would if the accident occurred in the early morning when he was driving from his home to the place of his employment. *It might as sanely be argued that on such an early morning trip he had not yet engaged in the duties of the day and was, therefore, not acting for the master*[1]. These different conclusions that may be arrived at, one as well supported in reason as the other, raise questions to be determined by the jury and may not be determined as matters of law."

Under the principles of law set out in the above quoted cases, we think that clearly a jury question was presented. There is no doubt but that the transportation of the workers to the job was for the benefit of York— not only that, but the evidence reflects that tools to be used on the job were being transported at the time of the collision. The evidence makes it obvious that the transportation of these workers was not something that happened only occasionally, but that the boys were accustomed to meeting at York's home and using one of his vehicles for transportation. It will be noted that transportation to the job was not only given to those who lived "at home," but also to others who met there for the purpose of being transported to the locale of the work. We do not agree with appellants' argument that the evidence was sufficient, as a matter of law, to overcome the presumption that Richard York was acting for the master while operating the master's car. Likewise,

---

[1]Emphasis supplied.

as stated in *Ball* v. *Hail, supra,* ''From the foregoing the only conclusion that can be reached is that the facts are not clear and undisputed as argued.'' We hold that the evidence presented a jury question as to whether Richard York was engaged in his master's business at the time of the collision.

Affirmed.